UNITED STATES

v.

Lloyd J. ETTINGER, III, 198 50
1912, Lance Corporal (E–3),
U.S. Marine Corps.

NMCM 91 1559.

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 31 Oct. 1990.

Decided 8 March 1993.

LCDR Richard D. Zeigler, JAGC, USNR, Appellate Defense Counsel.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

Before JONES, Senior Judge, and REED and LAWRENCE, JJ.

JONES, Senior Judge:

Appellant was charged with and pleaded guilty to one specification of unauthorized absence in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. A special court-martial of officer and enlisted members sentenced appellant to a bad-conduct discharge, confinement for six months, forfeiture of $482.00 pay per month for six months, and reduction to pay grade E–1. The convening authority approved the sentence, but suspended all confinement in excess of 60 days pursuant to a pretrial agreement. Before this Court, appellant raises three assignments of error.[1]

## I. BACKGROUND

Appellant's detailed defense counsel was Capt J.W. Arsi, USMCR; the assigned military judge was Capt R.E. Breckenridge, USMC. Approximately two months before appellant's court-martial, Capt Arsi was detailed as defense counsel in two other cases, those of enlisted Marines, Pitt and Pettit. The military judge who sat in both of those cases was also Capt Breckenridge.

Both Pitt and Pettit were charged with unauthorized absences. Both elected trial by military judge alone, and both pleaded guilty as charged. They were, however, each of a different race; Pitt was black, and Pettit was white. Based upon his pleas, Pitt received a sentence substantially more severe than that of Pettit for periods of unauthorized absence significantly less than those of Pettit.[2]

After trying Pitt and Pettit within an hour of each other, Capt Breckenridge, in an informal post-trial discussion with Capt Arsi and trial counsel, indicated his reasons for adjudging Pitt a more severe sentence. Although the memories of the parties are both vague and conflicting, Capt Breckenridge's explanation could reasonably be interpreted to mean that he considered Pitt's race in arriving at his sentence. Capt Arsi then reported Capt Breckenridge's comments to the Circuit Military Judge. After learning of this report, Capt Breckenridge sent a memorandum to the Circuit Military Judge that he subsequently admitted was "probably a little strongly worded." In which he complained that Capt Arsi's statement about his comments sounded "more reminiscent of somebody in the KKK [referring to Capt Breckenridge] than a Marine officer."[3]

---

1. I. THE MILITARY JUDGE ERRED BY DENYING THE CHALLENGES FOR CAUSE MADE AGAINST HIM BY BOTH APPELLANT AND TRIAL COUNSEL WHERE HIS ACTIONS AS MILITARY JUDGE IN BOTH THIS CASE AND PAST CASES CLEARLY CREATED AT LEAST THE APPEARANCE OF IMPROPRIETY.
II. THE MILITARY JUDGE ERRED BY DENYING THE APPELLANT'S CHALLENGES FOR CAUSE AGAINST TWO MEMBERS.
III. AN APPROVED SENTENCE WHICH INCLUDES CONFINEMENT OF SIX MONTHS AND FORFEITURES OF $482.00 PAY PER MONTH FOR SIX MONTHS IS INAPPROPRIATELY SEVERE.

2. Pitt was sentenced to a bad-conduct discharge and six months' confinement for unauthorized absences of approximately ten months whereas Pettit received a bad-conduct discharge and 71 days' confinement for unauthorized absences of about two years.

3. Capt Breckenridge's memorandum of 23 August 1990 was not appended to the record of trial. The record leaves unclear who it was that it is described as a member of the Ku Klux Klan, but we can only conclude that the reference is to the military judge.

The Circuit Military Judge conducted a personal inquiry into the matter and concluded that the disparate sentences were justified and that Capt Breckenridge was not racially prejudiced. The Chief Judge, Navy–Marine Corps Trial Judiciary, made further inquiry into Capt Breckenridge's conduct and came to the same conclusion. The Chief Judge, however, issued Capt Breckenridge a non-punitive letter of caution before allowing him to resume his duties as a military judge.

After returning to the bench, Capt Breckenridge was assigned to hear appellant's case. Prior to arraignment and selection of forum, Capt Arsi extensively *voir dired* the military judge. Capt Arsi then challenged him for cause, claiming that the military judge was prejudiced against him on the basis of the military judge's memorandum to the Circuit Military Judge and that Capt Breckenridge would practice "reverse discrimination against appellant who is white" to balance his judicial record. The military judge's post-trial comments in the Pitt–Pettit cases formed the basis for trial defense counsel's contention that appellant could not receive a fair and impartial sentence from this judge. Trial counsel also challenged Capt Breckenridge for cause. Capt Breckenridge denied the challenges and, under protest, appellant chose to be tried by members. Appellant, through counsel, specifically indicated that "but for" Capt Breckenridge's failure to recuse himself from appellant's case, appellant would have chosen to be tried by a military judge alone.

## II. DISQUALIFICATION OF THE MILITARY JUDGE

A military judge must disqualify himself from presiding at a court-martial whenever that military judge's impartiality might reasonably be questioned or whenever the military judge has a personal bias or prejudice concerning a party. Rule for Courts–Martial (R.C.M.) 902(a), (b)(1), Manual for Courts–Martial (MCM), United States, 1984. Those sections of R.C.M. 902 are based on 28 U.S.C. § 455(a)–(b) and are taken almost verbatim from the federal statute except for minor changes in terminology. Analy-sis, R.C.M. 902, MCM 1984 at A21–45 to 46. Both the federal statute and the Rule derive from Cannon III of the American Bar Association's Code of Judicial Conduct. *Id.*

### A. *The Appearance of Impropriety*

 Under R.C.M. 902(a), "a judge is presumed to be qualified and so the burden placed upon the party seeking disqualification is substantial in proving otherwise." *Wilson v. Ouelette*, 34 M.J. 798, 799 (N.M.C.M.R.1991) (citing with approval *United States v. Allen*, 31 M.J. 572, 601 (N.M.C.M.R.1990), *aff'd*, 33 M.J. 209 (C.M.A.1991)). Factual allegations do not have to be taken as true, *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987). "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Id.* The test a military judge must apply in determining whether to recuse himself is "whether the objective, reasonable man with knowledge of all the circumstances would conclude that the trial judge's impartiality might reasonably be questioned." *Allen*, 31 M.J. at 605; *see also Wilson*, 34 M.J. at 799–800 (test for the appearance of partiality is "whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case"). Moreover, a military judge's ruling on a challenge for cause is reviewable on appeal only for an abuse of discretion. *Id.* at 803.

Appellant argues that an objective person would have a reasonable doubt about Capt Breckenridge's impartiality because of the disparate sentences he awarded in the courts-martial of Pitt and Pettit and because of the improper comments he made about race following their trials. In other words, because of the taint flowing from the Pitt–Pettit comments, Capt Breckenridge was required to disqualify himself from hearing appellant's case. We disagree.

 Under R.C.M. 902(a) and 28 U.S.C. § 455(a), the general rule is that bias must focus on and concern a particular *party*.

*Wilson,* 34 M.J. at 800; *Diversified Numismatics v. City of Orlando,* 949 F.2d 382 (11th Cir.1991).

Our precedents further hold that "an appellate court ... should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel." Other courts have remarked that "[b]ias against an attorney is not enough to require disqualification under section 455 unless petitioners can show that such a controversy would demonstrate a bias against the party itself." [Citations omitted.]

*Id.* at 385.

■■■ Although a judge's remarks about a racial or other minority class *may* demonstrate pervasive or widespread prejudice sufficient to constitute bias against a party, the party must be a member of that racial or other minority class in order for the judge's comments to be disqualifying. *Id.* Were this not the rule, a party could seize upon any intemperate or ill-advised remark not directed at that party or to that party's class to compel the presiding judge to recuse himself from the whole class of cases. Neither R.C.M. 902 nor the federal statute requires such a result. *Phillips v. Joint Legislative Comm.,* 637 F.2d 1014, 1021 (5th Cir.1981). In the case before us, appellant is white. Because of that fact, appellant cannot, without more, use remarks Capt Breckenridge made in a prior case about a black accused and that accused's race to force him to disqualify himself from appellant's case. To hold otherwise would indulge in the same fallacious reasoning which the court specifically rejected in *Phillips.*

■■■ Appellant attempts to bring himself within a class directly affected by Capt Breckenridge's comments by arguing that the military judge would try to balance his record on race by sentencing any white accused, including appellant, more harshly than a similarly situated black accused. To support this position, Capt Arsi *voir dired* Capt Breckenridge about the military judge's sentencing record following the Pitt and Pettit cases, and charged that Capt Breckenridge was in fact adjudging more severe sentences in the cases of white accuseds in order to equalize his record. We reject such a conclusion as speculative. A judge should not recuse himself on unsupported, irrational, or highly tenuous speculation. *Hinman,* 831 F.2d at 939. In considering whether to disqualify himself, a judge must ignore "mere rumors, innuendoes, and erroneous information...." *Allen,* 31 M.J. at 605 (quoting *In re United States,* 666 F.2d 690, 695 (1st Cir.1981)). *See also United States v. Peltier,* 529 F.Supp. 549, 551 (C.D.Calif.1982). Additionally, statistical one-sidedness cannot, by itself, support an inference of judicial bias. *Southern Pacific Communications Co. v. American Tel. and Tel. Co.,* 740 F.2d 980, 995 (D.C.Cir.1984).

We are aware, of course, of our opinion in *Clarke v. Breckenridge,* No. 83–3618C (N.M.C.M.R. Jan. 10, 1991) (order granting Petition for Extraordinary Relief in the Nature of a Writ of Mandamus) which appellant has cited in his brief. The facts of appellant's case are, however, readily distinguishable from those in *Clarke.* First, the accused in *Clarke* was black. Second, the *voir dire* and subsequent challenge of Capt Breckenridge was marred by a number of irregularities.[4] Based on the facts of *Clarke,* we granted the petition for extraordinary relief and ordered Capt Breckenridge to grant the challenge for cause

---

4. The irregularities found by the Court included:

 A) Capt Breckenridge answered a number of questions during *voir dire* referring to notes which he refused to disclose because of the work product doctrine.

 B) Capt Breckenridge refused to sequester witnesses who were going to testify on the issue of his challenge for cause, including the Chief Judge, Navy–Marine Corps Trial Judiciary, despite being requested to do so.

 C) Capt Breckenridge had a number of private conversations with the witnesses referred to above but refused to reveal the nature of those conversations to trial or defense counsel citing judicial privilege.

 D) Capt Breckenridge made numerous findings of fact relative to his challenge and allowed these witnesses to review his findings for "style purposes." *Clarke,* slip op. at 3 and 4.

made against him. Those facts, however, are absent from appellant's case; accordingly, we decline to apply the reasoning of *Clarke* to this case.

### B. *Actual Prejudice*

■ Under R.C.M. 902(b)(1), a military judge must disqualify himself whenever that military judge has a personal bias or prejudice concerning a party. Generally speaking, bias and antipathy toward an attorney are insufficient to disqualify a judge.

> Generally, clashes between court and counsel are an insufficient basis for disqualification under either statute. As the Eighth Circuit has explained,
>
> "The term 'party' as used in [§ 144] does not include counsel as such.... Antipathy to an attorney is insufficient grounds for disqualification of a judge because it is not indicative of extrajudicial bias against a 'party.' ...
>
> "Similarly, under 28 U.S.C. § 455(a), which requires that a federal judge disqualify himself or herself 'in any proceeding in which his [or her] impartiality might reasonably be questioned,' a controversy between a trial judge and an attorney for parties to an action would not require disqualification of the judge in absence of showing of bias or personal prejudice to the parties."

*In re Cooper*, 821 F.2d 833, 838–39 (1st Cir.1987).

■ Only in the exceptional case, will a judge's antipathy toward a particular attorney require disqualification; e.g. "when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Hamm v. Board of Regents*, 708 F.2d 647, 651 (11th Cir.1983) (citing *Davis v. Board of School Comm'rs*, 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976)); *In re Cooper*, 821 F.2d at 839.

The bias against the attorney must be of a continuing and personal nature and not simply bias against the attorney because of his conduct. *In re Beard*, 811 F.2d 818, 830 (4th Cir.1987) (citing with approval *Davis v. Board of School Comm'rs*, 517 F.2d at 1051).

■ In the instant case, appellant argues that Capt Breckenridge's hostility toward Capt Arsi is the rare instance requiring disqualification. In support of his position, appellant relies on essentially two grounds: Capt Breckenridge's unsolicited memorandum to the Circuit Military Judge in which Capt Breckenridge stated that Capt Arsi's report of the Pitt–Pettit affair "was more reminiscent of somebody in the KKK than a Marine officer" and his concession during *voir dire* in the instant case that his memorandum was "probably a little strongly worded." We think that these facts, without more, fall short of what is required for disqualification of a sitting judge.[5] As the court observed in *Diversified Numismatics*, 949 F.2d at 385, "[t]empers do cool, and anger does dissipate."

Appellant's second and third assignments of error are without merit. As to the second assignment, Warrant Officer G and Captain F simply responded in *voir dire* to explain the general effects of unauthorized absences on their units, their experiences in administering nonjudicial punishment, and their serving as summary courts-martial. Neither exhibited an inelastic attitude toward the offense of unauthorized absence in general or toward appellant in particular. *Cf. United States v. Bannwarth*, 36 M.J. 265 (C.M.A.1993).

We specifically find the members' sentence, as approved and in part suspended on review below, appropriate. Accordingly, the findings of guilty and sentence, as

---

**5.** Appellate courts have rejected challenges made against judges who referred to the attorney before them as a "son-of-bitch" and a "wise-ass lawyer," *In re Beard*, 811 F.2d at 830, and who stated that the attorney "had no credibility." *In re Cooper*, 821 F.2d at 844 (citing similar cases in which judicial disqualification was not required despite the actions of the judge in question). *See also United States v. Gregory*, 656 F.2d 1132, 1137 (5th Cir.1981) ("It's [the judge's financial disclosure statement] going to give you a world of information about my background and I hope you choke on it.")

**1176**

approved and in part suspended on review below, are affirmed.

Judge REED and Judge LAWRENCE concur.